Appeal of **FARMERS' FUEL CO.**    **Docket No. 210.**

Submitted February 7, 1925; decided April 27, 1925.

*R. N. Miller, Esq., J. J. Miller, C. P. A., Edward McCarthy, Esq.,* and *H. A. Mihills, C. P. A.,* for the taxpayer.

*J. B. Milliken, Esq.,* and *Percy S. Crewe, Esq.,* for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

the question whether or not the Farmers' Fuel Co. and the Higginsville Switch Co. were affiliated during the year 1920, within the purview of section 240 (b) of the Revenue Act of 1918, and entitled to file a consolidated return. A hearing was had and the appeal submitted on the pleadings and oral and documentary evidence, from which the Board makes the following

FINDINGS OF FACT.

1. The Farmers' Fuel Co., the taxpayer herein, is a corporation organized under the laws of the State of Missouri. During the year 1920, and for several years prior thereto, it owned and operated three coal mines near Higginsville, Mo. At all times in the year 1920, F. W. Lukins was the owner of 93.6 per cent of the capital stock of the corporation, and in addition thereto he controlled 4.8 per cent of the capital stock, under written contracts, whereby the owners thereof, all of whom were employees of the corporation, agreed, for stated considerations, to sell Lukins their stock upon the termination of their respective employments, and, further, they endorsed the stock in blank and delivered it to Lukins as trustee, with irrevocable proxies to vote the stock as he might see fit. The remainder of the capital stock of the corporation was owned by R. A. Lukins, son of F. W. Lukins.

2. The Higginsville Switch Co. is a corporation also organized under the laws of the State of Missouri, with capital stock of $100,000, divided into 1,000 shares of the par value of $100 each. It owns and operates, and has owned and operated for many years, a railroad switch track extending from Higginsville, Mo., to a point about three miles west of Higginsville. At Higginsville it connects with the Missouri Pacific Railroad and at the other end with the Chicago & Alton Railroad. It served two of the mines operated by the Farmers' Fuel Co., the output of the third mine being delivered direct to the Chicago & Alton Railroad. The corporation served no persons or corporations other than the Farmers' Fuel Co. and there were no other shippers located along its line. It was possible for the Farmers' Fuel Co. to deliver the entire output of its three mines direct to a main line railroad without utilizing the tracks of the Higginsville Switch Co.

3. About the year 1915, F. W. Lukins, who was at that time president of the Farmers' Fuel Co., with a view to acquiring and operating the Higginsville Switch Co. for the benefit of the Farmers' Fuel Co., purchased at an average price of $3.50 per share, 782 shares, or 78.2 per cent of the capital stock of the Switch Company, and also purchased all of its outstanding obligations, consisting of promissory notes for $17,040.83 secured by a deed of trust on its assets. During the years 1916 to 1920, inclusive, the Switch Company was operated practically as a plant facility of the Farmers' Fuel Co. All of its revenue, with the exception of a few hundred dollars, was derived from the business given it by the Farmers' Fuel Co. It did not maintain separate offices but its affairs were transacted entirely through and by the officers and employees of the Fuel Company, which purchased its supplies, advanced it money to meet its pay roll, and loaned it money when its revenues were insufficient to cover expenses. The Switch Company showed an operating loss in each of the years 1916

to 1920, inclusive, and made additional loans from F. W. Lukins and the Farmers' Fuel Co. On December 31, 1919, it was indebted to Lukins and the Fuel Company in the amount of $29,029.98, and on December 31, 1920, in the amount of $31,381.86, of which $30,555.91 was owing to Lukins. The amount of the Switch Company's indebtedness to Lukins on December 31, 1919, and December 31, 1920, was more than the real value of its assets. It had no other creditors except Lukins and the Fuel Company, and could not obtain credit from any other source unless its notes or other obligations were endorsed by Lukins or the Fuel Company.

4. During the years 1916 to 1920, inclusive, 782 shares, or 78.2 per cent of the capital stock of the Higginsville Switch Co., was owned and held by F. W. Lukins. The remainder of the capital stock stood during that period in the names of the following persons:

|  | Shares. |
|---|---|
| F. B. Cloon | 5 |
| Mark Erskine | 47 |
| W. H. Belt | 17 |
| M. L. Belt | 124 |
| J. D. Showalter | 3 |
| Philip Key | 22 |
| Total | 218 |

Of the 124 shares standing in the name of M. L. Belt, 74 were owned, at least equitably, by the Bank of Higginsville, having been acquired by that bank in May, 1915, in part payment of an obligation which Belt owed the bank and upon which he defaulted. All these 124 shares, however, are still standing on the corporate records of the Switch Company in the name of M. L. Belt, although he has been dead for several years.

5. The Higginsville Switch Co. has never paid a dividend and since 1915 has never earned any profits. None of the minority stockholders has, since 1915, responded to notices of meetings, appeared at a meeting of stockholders, or voted by proxy or otherwise; they have sought no representation on the board of directors and had none, and none of them has complained or remonstrated or communicated with the Switch Company or its officers concerning their interests as stockholders. The addresses of the minority stockholders, other than the Bank of Higginsville and Mrs. M. L. Belt (widow of M. L. Belt), are unknown and have been, since some time prior to the year 1920, unknown to the officers of the Switch Company.

6. During the year 1920 the Higginsville Switch Co. was, for all practical purposes, a plant facility of the Farmers' Fuel Co., and the two businesses constituted in fact a unit.

7. The Farmers' Fuel Co. and the Higginsville Switch Co. filed a consolidated return of net income and invested capital for the year 1920. The Commissioner determined that the two corporations were not affiliated during that year, within the purview of section 240 of the Revenue Act of 1918, that they should have filed separate returns, and that, upon the basis of separate returns, there is, as to the Farmers' Fuel Co., a deficiency in tax in the amount of $3,804.01. The entire amount of the deficiency is not in controversy, but only so much thereof as arises from the disallowance by the Commissioner of the consolidated return. The taxpayer was notified of the Com-

missioner's determination by registered letter mailed July 21, 1924. The petition herein was filed September 18, 1924.

### DECISION.

The amount of the deficiency to be assessed should be recomputed in accordance with the following opinion. Final decision will be settled on consent or on fifteen days' notice under Rule 50.

### OPINION.

KORNER, *Chairman:* This Board, in the *Appeal of Isse Koch & Co., Inc.*, 1 B. T. A. 624, said:

The object sought to be accomplished by Congress, in enacting section 240 of the Revenue Act of 1918, was to tax as a business unit what really was a business unit. * * * We believe that a proper construction of the statute, if it is to serve the purpose for which it was intended, requires us to hold that the "control" mentioned therein means actual control, regardless of whether or not it is based upon legally enforceable means. The control, however, must be shown to be a genuine and real control actually exercised * * *.

The record in this appeal convinces us that the two corporations involved herein constituted a business unit. The Switch Company had no patrons other than the taxpayer and depended entirely on the latter for its revenues. In a very real sense it was operated by the taxpayer as a plant facility. The record makes it clear that the control of the stock of both corporations by Lukins was genuine and real and was actually exercised by him. The minority stockholders in the Switch Company had ceased to exist as such, except in a most nominal sense. We are of opinion that the facts in this appeal bring it pat within the above-quoted rule of this Board in *Koch's Appeal.* The corporations are entitled to be affiliated.